UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHERYL CLARK                                                                                              PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:12-CV-821-S

PSYBAR, LLC and
RICHARD M. KOLBELL                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Presently before the court are a motion to remand filed by Plaintiff Cheryl Clark (DN 5) and a motion for leave to file a sur-response in opposition to the motion to remand filed by Defendant Psybar, LLC (DN 15). Clark, a Kentucky resident, filed this action against Psybar and Defendant Richard M. Kolbell in Jefferson County, Kentucky, Circuit Court. According to Clark's complaint, she had been unable to work since 1994 due to an unspecified psychological medical condition. Clark states that both her employer and the Social Security Administration had found that she was totally disabled. Then, in 2011, her employer got a new insurance company, which hired Psybar, a company based in Minneapolis, Minnesota, to provide a medical evaluation and opinion concerning Clark. In turn, Psybar requested Dr. Kolbell, who had an address in Portland, Oregon, to assist Psybar with drafting the report and opinion. Clark alleges that neither Psybar nor Dr. Kolbell were registered to do business with the Kentucky Secretary of State, nor were they licensed to practice medicine or psychology in Kentucky.

According to Clark, Psybar and Dr. Kolbell did not examine her and did not seek the "raw data" from her previous examinations when preparing their report. Clark alleges that Psybar and Dr.

Kolbell wrote and published their report "without regard to its accuracy and with reckless disregard for [her]." Clark further alleges that the report issued by Psybar and Dr. Kolbell was false; "exposed her to public disgrace, humiliation, ridicule and contempt"; and was "published to a third party who in turn took action based upon its defamatory contents."

Based on those allegations, Clark brought claims against Psybar and Dr. Kolbell for negligence, negligence per se, and defamation. As to each claim, Clark seeks an unspecified amount of "compensatory, equitable, and exemplary relief," as well as "attorneys' fees" and "such other relief as is just and appropriate."

After Clark filed her complaint in Jefferson Circuit Court, Dr. Kolbell filed an answer and Psybar filed a motion to dismiss for failure to state a claim.[1] Then, Dr. Kolbell, with the consent of Psybar, removed the action to this court. Dr. Kolbell asserted in the notice of removal that the action was removable based upon diversity of citizenship. According to the notice of removal, Clark is a Kentucky citizen, Dr. Kolbell a citizen of Oregon, and Psybar a citizen of Minnesota and Florida.[2] The notice of removal further states that, although Clark did not specify how much she sought in damages, Dr. Kolbell had a good faith belief that the amount in controversy more likely than not exceeds $75,000.

Clark filed a motion to remand to the Jefferson Circuit Court. Clark argued that the notice of removal was insufficient to establish that the amount in controversy exceeds $75,000. Dr. Kolbell filed a response, in which he argued that the amount in controversy requirement of diversity

---

[1] The court has stayed briefing of Psybar's motion to dismiss for failure to state a claim and a motion to dismiss for lack of personal jurisdiction filed by Dr. Kolbell until after it has resolved Clark's motion to remand.

[2] The notice of removal states that Psybar is a limited liability company with two members: David Fisher, a Minnesota citizen, and Sheridan Fenwick, a Florida citizen.

jurisdiction was met. Dr. Kolbell did, however, note that if Clark would enter a binding stipulation that she would not seek more than $75,000 in the action, Dr. Kolbell would consent to a remand of the action to state court. Psybar did not file any response to the motion to remand.

After Dr. Kolbell filed his response, Clark signed a binding stipulation that she would not seek or obtain a judgment against Dr. Kolbell that exceeds $74,999.00. Dr. Kolbell withdrew his objection to the motion to remand. Clark then filed reply papers noting Dr. Kolbell's withdrawal of his objection and further noting Psybar's failure to file any objection to the motion to remand.

Psybar then filed a motion for leave to file a "sur-response" in opposition to the motion to remand. In that motion, Psybar noted that the stipulation signed by Clark was only effective as to judgments against Dr. Kolbell, not judgments against Psybar. Psybar asserted that this court retained jurisdiction for the reasons pointed out in Dr. Kolbell's original response to the motion to remand. Psybar requested that the court either deny the motion to remand or allow Psybar to file a sur-response setting out in full Psybar's arguments against remand. In turn, Clark filed a response to Psybar's motion for leave to file a sur-response, essentially arguing that Psybar waived its opportunity to oppose remand when it initially failed to file a response to the motion to remand. In Psybar's reply papers, it explains that it did not originally file a response to the motion to remand because Dr. Kolbell's response appropriately addressed the subject.

Initially, Psybar's motion for leave to file a sur-response is not well taken, as Psybar never filed a response in the first place. Psybar defaulted the motion to remand when it declined to offer any response to the motion. It is thus inappropriate for Psybar to request additional briefing on the motion in the form of a sur-reply. Instead, the more appropriate action would have been for Psybar to seek leave to file an out-of-time response to Clark's motion to remand.

However, in the interest of justice, the court will treat Psybar's motion as one to file an out-of-time response. Psybar undoubtedly pursued an unwise strategy in failing to respond in any manner to Clark's motion to remand.[3] Clark's argument that Psybar defaulted the motion to remand is technically correct. A party which files nothing is a party which takes no position. Regardless, the court's treatment of the matter reflects a preference for ruling on the merits as well as the preliminary stage of this litigation. The court sees no substantial prejudice in allowing Psybar to file an out-of-time response to the motion to remand. Accordingly, the court will allow Psybar's motion to file its out-of-time response and will consider the arguments articulated in Dr. Kolbell's now-withdrawn response papers in favor of federal jurisdiction.

Federal courts have original jurisdiction over matters between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. A civil case brought in state court may be removed by a defendant to federal court if the case could have been brought in federal court originally. 28 U.S.C. § 1441(a). It is the burden of the defendant seeking to remove the case to prove the requirements for diversity jurisdiction. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000).

Here, there is no question that the parties are citizens of different states. The only dispute concerns whether the amount in controversy exceeds $75,000. In cases, such as this one, where a plaintiff seeks an unspecified amount of damages, the defendant must prove that the amount in controversy "more likely than not" exceeds $75,000. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)).

---

[3] Even if Psybar may have agreed with Dr. Kolbell's analysis of the issues, it should have filed a response joining Dr. Kolbell's response. *See* Local Rule 7.1(c).

Although Clark is generally vague about the nature of the harms she supposedly suffered due to the defendants' allegedly negligent and defamatory conduct, it appears plain that Clark seeks compensatory damages stemming from the loss of her long-term disability ("LTD") benefits . Thus, we begin the analysis of the amount in controversy with those damages. A 2010 report from a doctor that assessed Clark states that she was receiving approximately $798 per month in LTD benefits and Social Security Disability benefits of $1,500 per month.[4] Although Clark does not identify in her complaint the exact date she lost LTD benefits, Dr. Kolbell's response papers point out that in a separate action Clark filed in this court, *Cheryl Clark v. American Electric Power System Long Term Disability Plan*, 4:12-CV-9 (W.D.Ky.), she alleged in her complaint that her LTD benefits were terminated effective December 15, 2010. Meanwhile, the complaint was filed in this action on November 1, 2012, more than 22 months after the termination of Clark's LTD benefits. If this action proceeded to trial and a final judgment within one and a half years from the date the complaint was filed – a conservative estimate of the time it would take to reach trial – that would mark 40 months from the time Clark's LTD benefits were terminated. *See Proctor v. Swifty Oil Co., Inc.*, 2012 WL 4593409, at *2 (W.D.Ky. Oct. 1, 2012) (using a conservative estimate of a year and a half for a wrongful discharge case to proceed from complaint to resolution at trial when considering the

---

[4] Dr. Kolbell's response papers suggest that Clark could have been receiving up to $23,617,80 per year ($1,968.15 per month) in LTD benefits. That number is premised on a 1994 disability claim notice signed by Clark that indicated her annual salary was $39,363 and the fact that the LTD plan entitled Clark to receive up to 60% of her base pay. However, the LTD plan also states that LTD benefits could be subject to offsets for other income an LTD benefit recipient received, including Social Security benefits. It appears that Clark did, in fact, receive Social Security benefits. The court thus finds that the amount identified in the 2010 medical report is more likely than not accurate as to the monthly amount of LTD benefits Clark was receiving.

amount in controversy). Those 40 months of LTD benefits at the rate of $798 per month amount to $31,920.[5]

Beyond the lost LTD benefits, Clark alleges other harms stemming from the supposedly defamatory actions of Psybar. Specifically, Clark alleges that she suffered "public disgrace, humiliation, ridicule and contempt" and "damage to her reputation" as a result of the allegedly false report issued by Psybar. Certainly, Clark's allegations of emotional and reputational damages put an additional amount of compensatory damages into controversy on top of the $31,920 in potential LTD benefits.

But the court need not engage in the difficult task of putting a number on the amount placed into controversy by Clark's allegations of emotional and reputational harms because it is clear that Clark also seeks punitive damages as to the defamation claim. In that regard, Clark asks for

---

[5] The parties dispute whether the court can consider future lost LTD benefits in determining the amount in controversy. According to Clark, *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415 (6th Cir. 1996) prevents the court from considering such future LTD benefits. The statement in that case that Clark relies upon reads, "'[F]uture potential benefits may not be taken into consideration in the computation of the amount in controversy in diversity actions in Federal District Courts involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy.'" *Harmon*, 88 F.3d at 416-417 (quoting Joseph E. Edwards, Annotation, *Determination of Requisite Amount in Controversy in Diversity Action in Federal District Court Involving Liability Under, or Validity of, Disability Insurance*, 11 A.L.R. Fed. 120, 129 (1972)). However, this is not a case where the controversy concerns the extent of an LTD insurer's obligation to its insured. Instead, this is a tort action brought against a doctor and a medical company for supposedly negligent and defamatory conduct. Thus, *Harmon* is inapplicable.

Instead, the court believes that the appropriate standard for assessing the amount in controversy here is the amount of any potential final judgment Clark could obtain if she managed to prevail on her claims and recover all the damages she is reasonably seeking. That amount certainly could include future lost LTD benefits, assuming Clark could prove that she would have been entitled to such future benefits but Defendants' tortious conduct has caused her to lose them. *See Weisenberger v. Weisenfeld*, 420 U.S. 636, 642 n.10 (1975) (using the present value of future potential Social Security benefits to determine the amount in controversy). In any event, the court need not estimate the amount of such future LTD benefits that are in controversy in this case because, as explained in the main text, even if Clark was not entitled to an award of future LTD benefits in any final judgment, the amount in controversy requirement is still met due to the other damages Clark seeks.

"exemplary relief" for that claim and alleges that Psybar issued the report "without regard to its accuracy and with reckless disregard for [her]." Assuming conservatively that punitive damages were assessed at a 2-to-1 ratio, the $31,920 in past LTD benefits in controversy would result in a punitive damages award of $63,840. And when the compensatory damages are added to the punitive damages, they total $95,760, over $20,000 above the statutory threshold for diversity jurisdiction. *See Proctor*, 2012 WL 4593409, at *2 (holding that a request for punitive damages on a claim with at least $33,966.00 in compensatory damages in controversy brings the total amount in controversy to "well beyond" $75,000).

Additionally, there is one other compelling argument that, even absent the damages analysis detailed above, leads to the conclusion that the amount in controversy more likely than not exceeds $75,000. Clark was willing to sign a stipulation that she would seek and obtain a judgment for no more than $74,999 from Dr. Kolbell. However, she refused to sign a similar stipulation with Psybar. Clark's unwillingness to limit her damages to below the jurisdictional amount against one party while simultaneously agreeing to so limit her damages against another party clearly indicates that Clark herself believes the amount of potential damages she could receive against Psybar is above the statutory requirement.

In sum, both a detailed analysis of the potential damages at issue, as well as Clark's own actions in this case, show that the amount in controversy more likely than not exceeds $75,000. Accordingly, this court has jurisdiction over the action and the motion to remand must be denied.

For the reasons stated above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of Defendant Psybar, LLC for leave to file a sur-response in opposition to plaintiff's motion to remand (DN 15) is treated as a motion to

file an out-of-time response and is **GRANTED**, and the motion of Plaintiff Cheryl Clark to remand (DN 5) is **DENIED**.

July 31, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**